# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### AUGUSTA DIVISION

MARK HERBERT SCHMITT,        *

            Plaintiff,     *

    v.                  *       CV 110-102

SUSAN M. REIMER, et al.,     *

           Defendants.    *

## O R D E R

On August 2, 2010, Plaintiff Mark Herbert Schmitt filed a complaint against sixteen named defendants based upon allegations arising out of his prior state court divorce proceedings. (Doc. no. 1.) Defendants subsequently filed motions to dismiss. On August 17, 2011, Plaintiff's claims for injunctive relief were dismissed with prejudice, and the remaining claims were dismissed without prejudice.[1] (Doc. no. 88.) The Court allowed Plaintiff fourteen days to file an Amended Complaint to cure the deficiencies identified in the Court's August 17, 2011 Order.[2] On September 28, 2011, Plaintiff

---

[1] On November 15, 2011, the claims against Defendant Kilpatrick were dismissed without prejudice for failure to timely effect service, and Defendant Kilpatrick was dismissed from the case. (Doc. no. 100.)

[2] In granting Plaintiff leave to amend his Complaint, the Court stated that "all claims must be supported by *specific* facts upon which the Court can make a determination as to whether a plausible claim has been sufficiently alleged." (Doc. no. 88 at 25.) The Court also warned that "[r]esubmission

filed his Amended Complaint entitled "Complaint for RICO Conspiracy and Civil Rights Violations." (Doc. no. 97.)

Presently pending before the Court are motions to dismiss the Amended Complaint filed by fourteen of the fifteen remaining Defendants[3] (doc. nos. 115, 116, 119, 122, 123, 125, 133, 138), and Defendant Reimer's Renewed Motion for Sanctions (doc. no. 137). Plaintiff has not responded to any of the pending motions. For the reasons set forth below, the motions to dismiss are **GRANTED**, and the motion for sanctions is **DENIED**.[4]

---

of an identical or substantially similar amended complaint will result in prompt dismissal and monetary sanctions." (Id.)

[3] Defendant Staulcup's motion to dismiss was filed a month after he filed an Answer to the Amended Complaint. (Doc. no. 120.) Once the answer was filed, the pleadings were closed, and a Rule 12(b)(6) motion to dismiss, which did not go to the jurisdiction of the Court, was inappropriate. Hallberg v. Pasco Cnty., No. 95-1354, 1996 WL 153673, at *2 (M.D. Fla. 1996). However, when a defendant files a Rule 12(b)(6) motion after filing an answer, the motion can be treated as a Rule 12(c) motion for judgment on the pleadings so long as the motion is filed early enough not to delay trial. Id.; Filo Am., Inc. v. Olhoss Trading Co., 321 F. Supp. 2d 1266, 1267-68 (M.D. Ala. 2004). Because the standards for dismissal under Rule 12(c) and Rule 12(b)(6) are essentially the same, Defendant Staulcup's motion should be granted for the reasons set forth in this Order regardless of whether the motion is construed as a 12(b)(6) or 12(c) motion. See Volk v. Zeanah, No. 6:08-cv-94, 2012 WL 318261, at *1 (S.D. Ga. Jan. 25, 2010) ("The Court therefore, applies the same standards to the Rule 12(c) motion as if it were brought directly under Rule 12(b)(6)."); Roma Outdoor Creations, Inc. v. City of Cumming, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008) ("A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss.") (internal quotation omitted).

[4] On March 6, 2012, Plaintiff filed a Motion for Entry of Default. (Doc. no. 128.) Plaintiff sought, pursuant to Federal Rule of Civil Procedure 55(a), an entry of default against all Defendants because Defendants Myers, Barbara Smith, Beth Smith, Glover, Bradford, and Schmitt failed to respond to the Amended Complaint. On that same day, the Court issued a show cause order providing those Defendants fourteen days to respond to the Amended Complaint. (Doc. no. 130.) The Court also warned that failure to either show cause or respond would result in an entry of default. (Id.) On March 13, 2012, Defendants Myers, Barbara Smith, Beth Smith, Glover, Bradford, and Schmitt filed an answer to the amended complaint and a motion to dismiss. (Doc. nos. 132 & 133.) As a result, Plaintiff's Motion for Entry of Default (doc. no.

## I. BACKGROUND

### A. Overview

Plaintiff brings this *pro se* action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, as well as 42 U.S.C. §§ 1983 and 1985, alleging violations of his rights under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. Plaintiff is suing nearly every individual who played a role in his state court divorce proceedings including: Judge Daniel J. Craig, the presiding judge over Plaintiff's divorce proceeding; Linda Schmitt, Plaintiff's ex-wife; John Garcia and Beth Smith, Plaintiff's divorce attorneys; Barbara Ann Smith, Beth Smith's law partner; Edward Coleman, Linda Schmitt's divorce attorney and his law partner Carl Surrett; Amanda Bellotti, the attorney who presided over the mediation between Plaintiff and his wife; Susan Reimer, the closing attorney on Plaintiff's marital home; Dr. Joseph Frey, the couple's custody evaluator; William Sams, an attorney who appears to have consulted with Plaintiff and his ex-wife; Gene Staulcup, a process server and/or private investigator; Kenneth Glover and Joseph Bradford, two alleged lovers of Linda Schmitt; and Susan Meyers, Linda Schmitt's sister.

---

128) and Defendants Myers, Barbara Smith, Beth Smith, Glover, Bradford, and Schmitt's Motion to Set Aside Default (doc. no. 135) are **DENIED AS MOOT.**

Plaintiff alleges that Defendants are members of a conspiracy he calls the "association of fact enterprise." (Am. Compl. ¶ 21.) The "association of fact enterprise," according to Plaintiff, "promotes the feminist agenda" by, among other things, granting custody to women in divorce proceedings. (Id. ¶ 24.) Plaintiff claims that the Superior Court judges in Columbia and Richmond Counties are the directors of the "association of fact enterprise;" Defendants Beth Smith, Barbara Smith, Sams, Garcia, and Coleman are its officers; and Defendants Schmitt, Myers, Glover, Bradford, Frey, and Staulcup are its hired employees. (Id. ¶ 21.) Plaintiff alleges that each Defendant engaged in individual acts of misconduct, and this misconduct, taken together, forms the predicate acts in a pattern of racketeering. (Id. ¶ 24.) The following statement of claims forms the basis of Plaintiff's conspiracy theory.[5]

Plaintiff believes that Judge Craig and the divorce attorneys involved in Plaintiff's divorce case conspired against him in an effort to hinder his divorce and deprive him of his fundamental rights. Plaintiff and his now former spouse, Linda Schmitt, appeared before Judge Craig of the Superior Court of Richmond County to initiate divorce proceedings. The proceedings commenced on June 5, 2009, and concluded on October 15, 2010, with the entry of a final divorce decree. Throughout

---

[5] Because Plaintiff's Amended Complaint contains numerous claims against each individual Defendant, the following statement of claims is not intended to be exhaustive.

the proceedings, Garcia, and subsequently Beth Smith, appeared on behalf of Plaintiff, and Coleman appeared on behalf of Linda Schmitt. According to Plaintiff, Judge Craig and Coleman committed fraud via the divorce decree because they authorized the transfer of $322,000.00 from Plaintiff's retirement account to Linda Schmitt knowing that this "unusually large amount" violated state and federal law. (Id. ¶ 1.) Plaintiff further alleges that Beth Smith, the attorney retained after Plaintiff fired Garcia, failed to reaffirm that Plaintiff wanted a jury trial in his divorce proceedings. (Id. ¶ 12.) He claims that Beth Smith, and her partner Barbara Smith, defrauded him by failing to refund $7,000 of his $8,400 retainer. (Id.) These acts, according to the Amended Complaint, form part of the conspiracy because the "financial gains go directly and indirectly to the woman, the lengthy divorce proceedings garner more court costs for the Courts, the attorneys get a lucrative and steady flow of income, [and] the Bar Associations make more donations to Judges . . . ." (Id. ¶ 24.)

Aside from raising claims against his divorce attorneys and the presiding judge, Plaintiff alleges that a number of other individuals performed acts in furtherance of the conspiracy. For example, Plaintiff claims that Dr. Frey, his custody evaluator, committed perjury "when he stated that he was never appointed to do the custody evaluation" in Plaintiff's divorce

5

case.   (Id. ¶ 6.)   Bellotti allegedly conspired against Plaintiff during mediation when she "intervened and stated [that Plaintiff] wouldn't get very far with [his request for full custody] here in the South."   (Id. ¶ 7.)   According to Plaintiff, Bellotti also presented a "biased and stereotypical view and supported Defendant Schmitt in trying to accomplish the very same thing."   (Id.)   Reiemer allegedly provided legal advice to Linda Schmitt and Myers regarding ways to conceal assets from Plaintiff during the divorce.   (Id. ¶ 19.) Plaintiff hired Staulcup to conduct surveillance on the relationship between Linda Schmitt and Glover.   (Id. ¶ 16.) According to Plaintiff, at the time Staulcup was hired, he was already working for Linda Schmitt, and therefore he knowingly entered into a conflict of interest.   (Id.)

Plaintiff's Amended Complaint also alleges that Linda Schmitt along with her friends and family conspired to swindle him out of his financial assets.   Specifically, Plaintiff alleges that Linda Schmitt stole $30,000.00 from him and used this money to fund her business, Big Hit Gift Baskets, LLC. (Id. ¶ 15.)   He alleges that Linda Schmitt's lover, Glover, and her sister, Myers, conspired with Linda Schmitt to conceal marital assets in Big Hit Gift Baskets, LLC.   (Id.)   Plaintiff alleges that Glover "enjoyed the benefit of food and shelter" at Plaintiff's expense, assisted Linda Schmitt in "concealing the

adulterous affair," and "benefited from the $30,000 that [Linda] Schmitt stole [from Plaintiff]." (Id. ¶ 14.) Bradford, another alleged adulterous lover of Linda Schmitt, is claimed to have threatened Plaintiff over the phone regarding the divorce proceedings. According to Plaintiff, this conduct amounted to retaliation. (Id. ¶ 9.)

Based upon the aforementioned claims, Plaintiff seeks $5,000,000.00 in damages from each Defendant, as well as an award of attorney's fees and declaratory relief "as this Court deems appropriate and just." (Id. ¶ 30.)

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Scheur v. Rhodes, 416 U.S. 232, 236 (1974). The court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 677-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible

on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While there is no probability requirement at the pleading stage, "something beyond . . . mere possibility . . . must be alleged." Twombly, 550 U.S. at 557 (citing Durma Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

## III. DISCUSSION

### A. Richmond County Superior Court Judge Daniel Craig's Motion to Dismiss[6]

Given the unique issues raised as a result of his position as a superior court judge, the frequency with which he appears in the Amended Complaint, and the potential effect a ruling on his motion to dismiss may have on the remaining claims, the Court's analysis will begin with Plaintiff's claims against Judge Craig. Judge Craig contends that he is entitled to absolute judicial immunity as to those claims that arise entirely from his conduct as a judicial officer during

_____

[6] On August 2, 2010, Plaintiff filed an almost identical suit against Defendant Craig in this Court. (No. 1:10-CV-103). That suit was based on Plaintiff's claims that Judge Craig "had him arrested" and incarcerated two times, ordered a search of two residential properties, entered a temporary restraining order and a final divorce decree which restricted his parental rights, and awarded a percentage of Plaintiff's retirement account to his wife as part of a final divorce decree. As in the present case, the Court allowed Plaintiff the opportunity to amend his Complaint to cure certain deficiencies. After filing an Amended Complaint, the Court dismissed the case because the claims were barred by Judge Craig's judicial immunity.

Plaintiff's state court divorce proceedings. The Court agrees and finds that all such claims should be dismissed.

"[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Mireles v. Waco, 502 U.S. 9, 9 (1991) (citation omitted). This doctrine, known as the doctrine of judicial immunity, "entitles a judge to absolute immunity from damages for actions taken in a judicial capacity unless the action was taken in the 'clear absence of all jurisdiction.'" Wilson v. Bush, 196 Fed. Appx. 796, 798 (11th Cir. 2006) (quoting Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000)).

In order to overcome judicial immunity, a plaintiff must show that the judge's actions were either not judicial in nature or were performed in the complete absence of jurisdiction. Mireles, 502 U.S. at 11. In determining whether an action is within a judge's judicial capacity, courts look to "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Id. at 12. Notably, "[a] judge does not act in the 'clear absence of all jurisdiction' when he acts erroneously, maliciously, or in excess of his authority, but rather only when

he acts without subject-matter jurisdiction." <u>Wilson</u>, 196 Fed. Appx. at 799.

Plaintiff asserts that the actions of Judge Craig "were not judicial in nature" and "were performed in the complete absence of jurisdiction."[7] (Am Compl., Sec. V ¶ 1.) However, after a careful review of the Amended Complaint, it appears that all of Plaintiff's claims against Judge Craig arise exclusively from *judicial* actions taken by Craig during the course of Plaintiff's divorce proceedings. For instance, Plaintiff contends that Craig's issuance of a Qualified Domestic Relations Order authorizing the transfer of $322,000.00 from Plaintiff's retirement account to his wife as part of a division of marital property violated Judge Craig's oath of office. (<u>Id.</u> ¶ 1.) Plaintiff also alleges that Judge Craig failed to consider certain relevant circumstances when determining how much temporary alimony and child support Plaintiff should pay. (<u>Id.</u> ¶ 5.) Plaintiff complains that Judge Craig failed to ensure that orders issued in the divorce proceedings were reduced to

---

[7] Although Plaintiff's first Complaint did not specify whether Plaintiff was bringing suit against Judge Craig in his official or individual capacity, it is clear from Plaintiff's Amended Complaint that Defendant is being sued in his *individual capacity.* (<u>See</u> Am. Compl., Sec. V ¶ 1 ("Plaintiff brings suit pursuant . . . to Title 42 U.S. Code § 1983 and § 1985 for violations of certain protections guaranteed to him by the. . . Federal Constitution by the Defendant Craig under Color of Law *operating outside his capacity as a* Judge in Superior Court of Richmond/Columbia County. . . .") (emphasis added)). However, even if Plaintiff were suing Defendant Craig in his official capacity, his claims for damages would be barred because Defendant is a "state official." <u>See</u> <u>Simmons v. Conger</u>, 86 F.3d 1080, 1085 (11th Cir. 1996) (finding award of damages against judge in his official capacity barred by sovereign immunity).

writing and that Judge Craig's statement in extradition paperwork regarding Plaintiff's arrest amounted to perjury. (Id. ¶¶ 10, 18.) Finally, Plaintiff alleges that Judge Craig committed wire fraud when he sent a letter pertaining to a "monetary judgment against [Plaintiff]. . . ." (Id. ¶ 8.) The very nature of these allegations demonstrates that Judge Craig's involvement in the alleged "conspiracy" was judicial in nature.

Moreover, Plaintiff has failed to allege any facts indicating that Judge Craig's actions were taken in the "clear absence of all jurisdiction." There is no question that Defendant Craig is a superior court judge and has jurisdiction to preside over divorce proceedings, and, accordingly, to make findings and issue orders in connection with such proceedings. See O.C.G.A. § 15-6-8(1) (stating that "[t]he superior courts have authority [t]o exercise original, exclusive, or concurrent jurisdiction, as the case may be, of all causes, both civil and criminal, granted to them by the Constitution and laws); Ga. Const. Art. VI, Sec. IV, Par. I (stating that superior courts have jurisdiction in all cases and exclusive jurisdiction in divorce cases). Thus, it is clear that Judge Craig had subject matter jurisdiction over Plaintiff's divorce proceedings.

In sum, Plaintiff's allegations fail to overcome Judge Craig's judicial immunity.[8] Plaintiff's allegations are based

---

[8] Moreover, Plaintiff cannot circumvent judicial immunity through a RICO claim by characterizing a judge's judicial actions as general criminal

11

solely on Judge Craig's judicial conduct, and Plaintiff's bald allegation that Judge Craig's actions were taken in the absence of subject matter jurisdiction is unsupported by any facts or law contained in the Amended Complaint. Because judicial immunity shields Judge Craig from suits for damages based upon his judicial actions, Plaintiff's claims for damages against Judge Craig must be dismissed.

## B. Remaining Defendants' Motions to Dismiss

Plaintiff's Amended Complaint also raises claims under the RICO Act, as well as several civil rights statutes including 42 U.S.C. § 1983, which prohibits the deprivation of constitutional rights by a state actor, and 42 U.S.C. § 1985, which prohibits conspiracies to deprive a person of the equal protection of the laws. These various claims will be addressed in turn below.

### 1. Federal RICO Claims

#### i. 18 U.S.C. § 1962(c)

Plaintiff alleges that Defendants violated 18 U.S.C. § 1962(c). Section 1962(c) of the RICO Act requires that a plaintiff prove that a defendant participated in the conduct of an enterprise's affairs "through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Thus, to establish a federal

---

wrongdoing. See Blackburn v. Calhoun, No. 2:07-cv-166, 2008 WL 850191, at *21 (N.D. Ala. Mar. 4, 2008) ("[Judicial] immunity applies where the RICO-challenged acts are 'judicial in nature.' . . . That means that merely alleging criminal wrongdoing is not enough."); see also Hollis-Arrington v. PHH Mortg. Corp., 205 Fed. Appx. 48, 51 (3d Cir. 2006) (finding judicial immunity barred homeowners' RICO case against judicial defendants because allegations all involved acts performed in a judicial capacity).

civil RICO violation, a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Abele v. Tolbert, 172 Fed. Appx. 967, 969 (11th Cir. 2006) (citation omitted).

In order to make the requisite showing of a "pattern of racketeering activity," Plaintiff must demonstrate that Defendants performed at least two related acts listed in 18 U.S.C. § 1961(1), which may include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, [and] extortion," among others. Therefore, to survive a motion to dismiss, Plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts. See Republic of Panama v. BCCI Holdings, 119 F.3d 935, 949 (11th Cir. 1997).

Although Plaintiff has identified some predicate acts by name, he has not set forth any facts showing they are related, and, more importantly, the allegations surrounding the predicate acts identified are far too conclusory to survive a motion to dismiss. See Andela v. Univ. of Miami, 692 F. Supp. 2d 1356, 1377 (S.D. Fla. 2010) ("To survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." (quoting Rogers v. Nacchio, 241 Fed. Appx. 602, 607 (11th Cir. 2007))); see also Levitan v. Patti, No. 3:09-cv-321, 2011

WL 1299947, at *6 (N.D. Fla. Feb. 8, 2011) ("The Rules require a heightened pleading standard for claims involving RICO and civil rights violations based on fraud."). For instance, although Plaintiff alleges that various Defendants committed mail fraud, wire fraud, robbery, and retaliation, he does not provide the Court with facts supporting the statutory elements of these acts.[9] As a result, the claims brought pursuant to § 1962(c) must be dismissed.

### ii. 18 U.S.C. § 1962(d)

Plaintiff's Amended Complaint also asserts a claim under 18 U.S.C. § 1962(d). Section 1962(d) of the RICO Act makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c). 18 U.S.C. § 1962(d). "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1293 (11th Cir. 2011) (internal citation and quotation omitted).

Although Plaintiff alleges that all Defendants conspired against him, his Amended Complaint does not contain specific allegations that Defendants agreed to commit illegal acts or

---

[9] Plaintiff also alleges that Defendants violated a number of statutes including 18 U.S.C. §§ 241, 242, 1001, 1621. (Am. Compl. ¶¶ 4, 6, 7, 11, 13, 14, 15, 18, 19, 20.) However, violations of these provisions are not included within the definition of "racketeering activity" and thus cannot be predicate acts that support a RICO violation.

agreed to engage in racketeering. Because Plaintiff's allegations were insufficient to support a claim under § 1962(c), they are also insufficient under § 1962(d) to support a claim that Defendants conspired to violate § 1962(c). See Rogers, 241 Fed. Appx. at 609 ("[W]here a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails."). As such, the claims under § 1962(d) should be dismissed.

## 2. Section 1983 Conspiracy

Aside from a RICO conspiracy, Plaintiff alleges that Defendants conspired against him in violation of 42 U.S.C. § 1983. (Am. Compl. V.) To succeed on a 42 U.S.C. § 1983 claim, a party must establish that the offending conduct was committed by a person acting under color of state law and that the conduct deprived him of rights secured by the Constitution or laws of the United States. Fullman v. Graddick, 739 F.2d 553, 561 (11th Cir. 1984). A plaintiff claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists. See Phillips v. Mashburn, 746 F.2d 782, 784 (11th Cir. 1984). Following Iqbal, "complaints in § 1983 cases must now contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Randall v. Scott, 610 F.3d 701, 708 n. 2

15

(11th Cir. 2010) (quotation omitted); see also Albra v. City of Fort Lauderdale, 232 Fed. Appx. 885, 891 (11th Cir. 2007) (finding plaintiff did not sufficiently state § 1983 conspiracy claim because plaintiff only made "vague allegations that a conspiracy existed" and failed to allege that defendants agreed to violate his rights); Eubank v. Leslie, 210 Fed. Appx. 837, 842 (11th Cir. 2006) (granting motion to dismiss as to § 1983 conspiracy claim because in complaint plaintiff only acknowledged the existence of a conspiracy and otherwise failed to allege how defendants conspired among themselves to violate his rights).

Plaintiff's allegations "merely string together" incidents that occurred during his marriage and subsequent divorce proceedings "without showing contacts between [Defendants] that could prove private and alleged state actors had 'reached an understanding' to violate [Plaintiff's] rights." See Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992). Although Plaintiff repeatedly alleges that the parties "conspired" to perform various acts,[10] he has provided no specific facts demonstrating an underlying agreement. These vague allegations

---

[10] For the most part, Plaintiff's conclusory allegations of a "conspiracy" are asserted in conjunction with various judicial actions taken by Judge Craig during the divorce proceedings. Importantly, the Supreme Court has held "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with [a] judge." Dennis v. Sparks, 449 U.S. 24, 28 (1980).

of conspiracy, without supporting facts, are not enough to avoid dismissal.

Additionally, even if Plaintiff did provide sufficient facts, his § 1983 would still fail as he cannot establish that he was deprived a federal right by a person *acting under color of state law*. Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001) (emphasis added). Plaintiff has not and cannot allege that any of the Defendants, other than Judge Craig, are state actors.[11] Thus, to the extent that Plaintiff alleges Defendants conspired to violate his constitutional rights, these claims should be dismissed.

### 3.   Section 1985 Conspiracy

Plaintiff also alleges that Defendants conspired against him in violation of 42 U.S.C. § 1985. To establish a § 1985 conspiracy claim, a plaintiff must show an agreement between two or more persons to deprive him of his civil rights. 42 U.S.C. § 1985; Dickerson v. Alachua Cnty. Comm'n, 200 F.3d 761, 767 (11th Cir. 2000). Specifically, a plaintiff must show: "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal

---

[11] Defendants are private individuals, and Plaintiff has not alleged sufficient facts to satisfy any of the three tests whereby their actions as private actors would be considered state action. They do not partake in traditional functions of the state sufficient to satisfy the public function test. See Focus on the Family v. Pinellas Suncoast Transit Auth, 344 F.3d 1263, 1277 (11th Cir. 2003). Further, their alleged actions were not coerced or encouraged by the government so as to satisfy the state-compulsion test. Id. Finally, the government was not in a position of interdependence with any of the Defendants to satisfy the nexus joint-action test. Id.

protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Childree v. UAP/GA AG Chem, Inc., 92 F.3d 1140, 1146-47 (11th Cir. 1996) (citing Lucero v. Operation Rescue, 954 F.2d 624, 627 (11th Cir. 1992)); see also Park v. Atlanta, 120 F.3d 1157, 1161 (11th Cir. 1997). To state a claim, a plaintiff's complaint must inform the defendant of the nature of the alleged conspiracy, beyond a mere allegation that a conspiracy existed. Fullman, 739 F.2d at 557 (citations omitted). "A complaint may justifiably be dismissed because of the conclusory, vague, and general nature of the allegations of conspiracy." Id. (citation omitted).

Apart from listing 42 U.S.C. § 1985 as a basis for jurisdiction, Plaintiff only alleges that Defendants, as members of the "association of fact enterprise," conspired to deprive him of his civil rights. However, these generalized allegations of a conspiracy are not sufficient to inform Defendants of the nature of the alleged conspiracy. See id. at 557. Even accepting the allegations as true and viewing the allegations in the light most favorable to Plaintiff, Plaintiff has not pled facts sufficient to support a claim for a violation of § 1985.

Additionally, as with his § 1983 claims, Plaintiff cannot establish that Defendants are state actors, a necessary element of his § 1985 claim. See Terry Props., Inc. v. Standard Oil Co., 799 F.2d 1523, 1533-34 (11th Cir. 1986) (private actors may be liable for infringement of 14th Amendment rights only through conspiracy with state actors in violation of 42 U.S.C. § 1985(3)). Moreover, Plaintiff has not alleged that Defendants engaged in a conspiracy that was aimed at one of the few serious rights that are constitutionally protected against *private* impairment. Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1312 (11th Cir. 2010) (emphasis added). The only rights that the Supreme Court has stated are enforceable against private conspirators under § 1985 are the rights of intrastate travel and involuntary servitude, rights which are not implicated under the facts of this case. Id. Plaintiff's conclusory allegations of conspiracy are therefore insufficient to withstand a motion to dismiss.

4.   42 U.S.C. § 1986

Construing the Amended Complaint liberally, it appears that Plaintiff also alleges a violation of 42 U.S.C. § 1986. (Am. Compl. ¶ 3 ("Defendant Craig, Defendant Coleman, and Defendant Schmitt all had the power to either prevent, or try to prevent the commission of such a wrong is negligent under 42 U.S.C. 1986.")) However, § 1986 conspiracy claims are "derivative of §

1985 violations." _Park,_ 120 F.3d at 1160. Because Plaintiff's Amended Complaint fails to state a § 1985 claim, Plaintiff's § 1986 claim necessarily fails. _See_ _id._ (noting a § 1986 claim "requires the existence of a § 1985 conspiracy").

### 5. 18 U.S.C. §§ 241 and 242 Claims

Plaintiff alleges that several Defendants violated 18 U.S.C. §§ 241 and 242. Under 18 U.S.C. § 241, individuals who conspire to "injure, oppress, threaten, or intimidate" another person's "free exercise or enjoyment of any right or privilege secured to him by the Constitution" shall be fined, or imprisoned, or both. 18 U.S.C. § 241. In addition, under 18 U.S.C. § 242, any individual, who, while acting under color of any law, willfully deprives a person of his constitutional rights based upon that person's race shall be fined, or imprisoned, or both. 18 U.S.C. § 242. However, these two provisions apply in the criminal forum only and therefore do not create a private right of action in this case. _See_ _In re Estelle_, 516 F.2d 480, 486 (5th Cir. 1975)[12] (finding § 1983 "provides for private relief in civil actions from the deprivation of rights secured by the Constitution and its laws," whereas §§ 241 and 242 "provide for criminal penalties for the deprivation of such rights."); _see also_ _Lewis v. Brautigam_, 227 F.2d 124, 128 (5th Cir. 1955) (characterizing 18 U.S.C. § 242 as

---

[12] _See_ _Bonner v. City of Prichard, Ala._, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding Fifth Circuit decisions made on or before September 30, 1981, are binding precedent in Eleventh Circuit).

"the criminal counterpart of § 1983"); <u>Cohen v. Carmel</u>, No. 10-22244, 2010 WL 2991558, at *1 (S.D. Fla. 2010) ("The Plaintiff's claims arising out of 18 U.S.C. §§ 241 and 242 must be dismissed because there is no private cause of acti[on] arising from these criminal statutes."). As a result, Plaintiff's §§ 241 and 242 claims are dismissed.

### 6. 18 U.S.C. § 1621 Claim Against Defendant Frey

In the Amended Complaint, Plaintiff asserts a perjury claim against Defendant Frey pursuant to 18 U.S.C. § 1621 for Frey's alleged statement that he was never appointed to perform a custody evaluation. (Am. Compl. ¶ 6.) However like §§ 241 and 242, § 1621 is a criminal provision and thus cannot form the basis of a civil cause of action. See <u>U.S. v. Dunnigan</u>, 507 U.S. 87, 94 (1993) ("In determining what constitutes perjury, we rely upon the definition that has gained general acceptance and common understanding under the federal criminal perjury statute, 18 U.S.C. § 1621."); <u>Davis v. Shinseki</u>, No. 3:09-CV-382364, 2011 WL 382364, at *7 n. 10 (M.D. Ala. 2011) ("'[A]s criminal statutes, [18 U.S.C. §§ 1621, 1512] do not convey a private right of action' nor do they authorize an individual to initiate criminal proceedings."). Therefore, this claim is dismissed.

## C. Motion for Sanctions

In conjunction with her motion to dismiss, Defendant Reimer filed a renewed motion for sanctions. (Doc. no. 137.)[13] She contends that, like the original Complaint, the Amended Complaint has no evidentiary support and was filed for improper purposes and in bad faith.[14]

"Sanctions pursuant to Fed. R. Civ. P. 11 may be imposed against an attorney or a party who files a pleading that (1) has no reasonable legal basis; (2) has no reasonable factual basis; or (3) is filed for an improper purpose." Harris v. Heinrich, 919 F.2d 1515, 1516 (11th Cir. 1990). Rule 11's purpose is to "discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defendants." Id. (internal citation and quotation omitted). Although a plaintiff's *pro se* status does not prevent the Court from awarding sanctions, a court must consider it and must make a "case-by-case determination of whether a *pro se* plaintiff's actions in bringing a complaint were objectively unreasonable." Id. at 1517. In determining "objective reasonableness," the

---

[13] In the Court's August 17, 2011 Order, Defendant Reimer's first motion for sanctions was denied in light of Plaintiff's *pro se* status. (Doc. no. 88 at 25-27). The Court found it prudent to first provide Plaintiff with notice of his Complaint's deficiencies and allow him an opportunity to amend the Complaint. The Court, however, warned Plaintiff of the requirements of Rule 11 and that failure to draft an amended complaint in accordance with those rules *may* result in monetary sanctions.

[14] In accordance with Rule 11(c)(2), Defendant Reimer served the motion for sanctions on Plaintiff and allowed him twenty-one days after service to withdraw his Amended Complaint before she filed the motion with the Court.

Eleventh Circuit mandates that district courts inquire as to "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." Baker v. Alderman, 158 F.3d 516, 524 (11th Cir. 1998).

Although the Court previously advised Plaintiff that any Amended Complaint must be drafted in accordance with Rule 11, and that a failure to do so may result in sanctions, the Court does not believe that sanctions are appropriate in this case. While a Court's patience with *pro se* litigants has its limits, the Court "should show [some] leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education." GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998). As stated before, Plaintiff's allegations are somewhat incredible and the Amended Complaint, as a whole, appears to be based upon Plaintiff's desire to retaliate against all those who he perceives played a role, no matter how minor, in causing the deterioration of his personal and financial situation. However, it appears that Plaintiff's Amended Complaint is a good faith effort to comply with the Court's August 17, 2011 Order and the Court is unwilling to find that Plaintiff signed the pleadings knowing they were frivolous. As a result, Defendant Reimer's motion for sanctions is denied.

## IV. CONCLUSION

Based upon the foregoing, Defendants' motions to dismiss (doc. nos. 115, 116, 119, 122, 123, 125, 133, 138) are **GRANTED**.[15] Defendant Reimer's Renewed Motion for Sanctions (doc. no. 137) is **DENIED**. The Clerk is **DIRECTED** to terminate all deadlines and motions, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this ___13th___ day of June, 2012.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[15] Although Defendant Belotti did not file a motion to dismiss, the Court finds it appropriate to dismiss the claims against her. It is within a district court's reserve of power to sua sponte dismiss a lawsuit for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "'as long as the procedure employed is fair.'" Helton v. Hawkins, 12 F. Supp. 2d 1276, 1283 (M.D. Ala. 1998) (quoting Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir. 1998)). Such fair procedure includes allowing service of the complaint on the defendant, notice to all parties of the court's intention to dismiss, a statement of the reasons for the dismissal, and providing the plaintiff with an opportunity to either amend her complaint or respond to the basis for dismissal. See Jefferson Fourteenth Assoc. v. Wometco de Puerto Rico, Inc., 695 F.2d 524, 526-27 (11th Cir. 1983); see also Wyatt v. City of Boston, 35 F.3d 13, 14-15 (1st Cir. 1994) ("[A] district court may, in appropriate circumstances, note the inadequacy of the complaint and, on its own initiative, dismiss the complaint. Yet a court may not do so without at least giving plaintiffs notice of the proposed action and affording them an opportunity to address the issue.").

In this case, Plaintiff was provided an opportunity to amend his Complaint, yet the Amended Complaint failed to cure many of the deficiencies identified in this Court's August 17, 2011 Order. Additionally, the claims asserted against Defendant Belotti are nearly identical to the claims asserted against the other Defendants. Specifically, Defendant Belotti allegedly violated 18 U.S.C. §§ 241 and 242, 18 U.S.C. § 1962, and 42 U.S.C. §§ 1983, 1985, and 1986. Because the other Defendants filed motions to dismiss as to those claims, Plaintiff had an opportunity to respond to the basis for dismissal, which Plaintiff failed to do. Finally, for the reasons stated in this Order, Plaintiff cannot maintain a cause of action under any of the above listed statutes, and therefore the claims against Defendant Bellotti should be **DISMISSED**.